```
                UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF TENNESSEE
                      NASHVILLE DIVISION
```

WILLIAM DAVIDSON HAMBY, JR.,  )
                              )
        Plaintiff,             )   Case No. 3:12-0056
                              )   Judge Trauger/Bryant
     v.                        )
                              )
DR. NONA SETLER-LOGAN, et al., )
                              )
        Defendants.            )

**TO: The Honorable Aleta A. Trauger**

### REPORT AND RECOMMENDATION

Defendants Nona Setler-Logan ("Logan") and Karen Sugden-Kundar ("Kundar") have filed their motion for summary judgment (Docket Entry No. 70). Plaintiff has responded in opposition (Docket Entry Nos. 85 and 90).

For the reasons stated below, the undersigned Magistrate Judge RECOMMENDS that defendants' motion for summary judgment be GRANTED, and the complaint DISMISSED.

### Statement of the Case

Plaintiff William Hamby, Jr., a prisoner who is proceeding pro se, has filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that defendants Dr. Nona Logan and nurse Karen Kundar have violated his constitutional rights by their deliberate indifference to his serious medical needs while confined as a prisoner by the Davidson County Sheriff's Office in Nashville, Tennessee (Docket Entry No. 1). Plaintiff Hamby also alleges a state law claim against defendants for medical malpractice.

Specifically, plaintiff claims that on November 13, November 20 and December 8, 2011, defendant Logan denied him all examination and treatment for several medical conditions from which plaintiff claims to suffer, including coccidioimycosis disease, stage 3 cirrhosis, hepatitis C liver disease, high blood pressure, and neuropathy secondary to prior gunshot and knife wounds. Plaintiff Hamby also alleges that defendant Logan is biased against him because of his religion (Judaism) and his race (mixed ethnicity). Plaintiff alleges that defendant Kundar, who is identified in the complaint as "medical appeals/grievance coordinator," "denies <u>all</u> grievances that involve medical complaint, so Kundar causes medical malpractice and negligence also, continuing injury." (Docket Entry No. 1 at 5).

Defendants filed answers denying liability (Docket Entry Nos. 20 and 21). After completion of discovery, defendants have filed their motion for summary judgment. This motion has been referred to the undersigned Magistrate Judge for report and recommendation (Docket Entry No. 4).

## **Standard of Review**

A party may obtain summary judgment by showing "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. <u>See</u> Fed.R.Civ.P. 56(a); <u>Covington v. Knox County School Sys.</u>, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden

of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine dispute of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed.R.Civ.P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## **Analysis**

*Deliberate indifference to serious medical needs*. The

complaint does not state whether plaintiff Hamby is being held in pretrial detention or, instead, is confined following imposition of a sentence. Nevertheless, while the Eighth Amendment does not apply to pretrial detainees, the Due Process Clause of the Fourteenth Amendment does provide them with a right to adequate medical treatment that is analogous to prisoners' rights under the Eighth Amendment. Gray v. City of Detroit, 399 F.3d 612, 615-16 (6th Cir. 2005). A detainee's right is violated "when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001). As the Supreme Court explained, "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Deliberate indifference entails more than mere negligence, but "is satisfied by something less than acts or omission for the very purpose of causing harm." Farmer v. Brennan, 511 U.S. 825, 835 (1994).

There is an objective and a subjective component to a deliberate indifference claim. The objective component requires the existence of a "sufficiently serious" medical need. Farmer, 511 U.S. at 834. A "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Blackmore v. Kalamazoo County, 390 F.3d

4

890, 897 (6th Cir. 2004). The subjective component requires that the accused have a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. In other words, a plaintiff must show that the prison official "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." Dominguez v. Corrections Med. Servs., 555 F.3d 543, 550 (6th Cir. 2009) (quoting Comstock, 273 F.3d at 703). The subjective component is intended "to prevent the constitutionalization of medical malpractice claims." Id. (internal quotations omitted).

      In support of their motion for summary judgment, defendants have filed an authenticated copy of certain medical records on plaintiff Hamby from the Davidson County Criminal Justice Center (Docket Entry No. 70-3 and -4). These records indicate that plaintiff Hamby underwent a "receiving screening" on November 2, 2011. During that screening, the record indicates that plaintiff Hamby denied that he had been treated for certain listed disorders, including "high blood pressure." (Docket Entry No. 70-4 at 2). He did report that he suffered from PTSD and nerve damage from gunshot wounds in 1997 and 1999 and a knife wound from 2003. Id. He further stated that he was currently taking prescribed medications including Gabapentin, Soma, Wellbutrin, Paxil, Vistaril and Seroquel (Id.). He further indicated that he had been exposed

5

to or diagnosed with hepatitis (Id.). Plaintiff's blood pressure was recorded as 132/77.

The record suggests that on November 3, 2011, at 6:00 p.m. plaintiff Hamby filed a sick call request seeking medical and mental health services (Docket Entry No. 70-4 at 6). He stated that he needed to have tests and shots for his hepatitis C and that he needed Gabapentin for his multiple gunshot, knife and shrapnel wounds. Plaintiff also stated that he had PTSD (post traumatic stress disorder), bipolar and manic depression and paranoid schizophrenia, that he previously had been in mental institutions and that he needed numerous "psycho meds." According to this record, plaintiff was seen by a healthcare provider on the following day, November 4, 2011. Plaintiff was scheduled for blood pressure checks twice a week for two weeks and was transferred into a psych observation unit on November 4, 2011 (Id. at 8).

On November 7, 2011, plaintiff submitted a second sick call request for "mental health" in which he stated that he was in the psych observation unit, that he had no mental issues, and that he was being denied the right to go into the general population all because of "false info." Plaintiff stated, "I need no meds, and am of sound mind." (Id. at 9). According to this same record, plaintiff was seen and triaged on November 7. The psychiatric provider initial evaluation note dated November 7, 2011, states that plaintiff admitted that he had made "false statements" about

6

his mental health history and about his case, and that he was demanding to be released from psych observation immediately because "he says he isn't mentally ill." (Id. at 10).

The record further indicates that on November 7, 2011, plaintiff Hamby was assessed for his history of hepatitis C and that no medication changes were recommended (Id. at 13).

In a follow-up psychiatric progress note dated November 14, 2011, the writer states that plaintiff denied he had a mental illness but stated, "I just said those things because I didn't like where I was housed and hoped it would help me get something for sleep." According to this record plaintiff denied any history of inpatient or outpatient psychiatric treatment (Id. at 16).

In a health and physical assessment dated November 15, 2011, plaintiff denied any history of hepatitis (Id. at 18, line 19). He further denied a history of liver problems (Id. at 19, line 25). In the "comments" section of this assessment, it is reported that plaintiff gave a history of hepatitis C since 2005 (Id. at 21). Plaintiff's blood pressure on November 30, 2011, was recorded as 128/92 (Id. at 24).

Although plaintiff in opposition insists that he is suffering from numerous serious and life-threatening medical conditions, he has offered no authenticated records or other competent evidence to establish these claims. Similarly, although plaintiff alleges that his various medical maladies require

7

immediate treatment by a number of prescription medications, he has provided no competent medical evidence in support of those claims.

In the face of a record that demonstrates that plaintiff has been seen and assessed by medical personnel in the Davidson County Criminal Justice Center on numerous occasions in response to plaintiff's complaints, and in the absence of any competent medical evidence that plaintiff currently suffers from a "serious medical need," the undersigned finds that plaintiff has failed to establish the objective component requiring the existence of a serious medical need, or the subjective component requiring a showing that defendants "subjectively perceived facts from which to infer substantial risk to the prisoner, that they did in fact draw that inference, and that they then disregarded the risk." Dominquez, 555 F.3d at 350. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). For these reasons, the undersigned Magistrate Judge finds that there is no genuine issue of material fact for trial and that plaintiff's claims of deliberate indifference to serious medical needs under §1983 must be dismissed as a matter of law.

State medical malpractice claim. Defendants argue that plaintiff Hamby's state claim for medical malpractice must be

dismissed for his failure to comply with state law requiring a prior notice to the healthcare provider and a certificate of good faith as defined by Tennessee law.

Tennessee Code Annotated § 29-26-121 requires that any person asserting a potential claim for healthcare liability shall provide written notice of the potential claim to each healthcare provider that will be named defendant at least sixty (60) days before the filing of a complaint based upon healthcare liability. Defendants Logan and Kudar have filed their affidavits stating that they have not received any notice as required by § 29-26-121(a) (Docket Entry Nos. 70-1 and 70-2). In addition, Tennessee Code Annotated § 29-26-122 requires that, in any lawsuit against a healthcare provider in which expert testimony is required, a plaintiff must file a certificate of good faith along with the complaint. According to the statute, if no certificate of good faith is filed with the complaint, the complaint must be dismissed. Such a certificate must state that plaintiff or plaintiff's counsel has consulted with one or more expert witnesses who have provided a signed written statement confirming that (1) they are competent to express an opinion in the case and (2) they "believe, based upon information available, that there is a good faith basis to maintain the action consistent with state law."

From the record in this case, no such certificate of good faith was filed with plaintiff Hamby's complaint.

9

The Sixth Circuit has found that these notice and certification requirements in any medical malpractice action in Tennessee are mandatory, and that a trial court may exercise discretion to excuse compliance "only for extraordinary cause." Reed v. Speck, 2012 WL 6176846, at *7 (6th Cir. Dec. 11, 2012) (citing Brandon v. Williamson Med. Ctr., 343 S.W. 3d 784, 790 (Tenn. Ct. App. 2010) and Tenn. Code Ann. § 29-26-121(b).

In the absence of the required pretrial notice and certificate of good faith, the undersigned finds that there is no genuine issue of material fact for trial, and that plaintiff Hamby's state claim for medical malpractice must be dismissed as a matter of law.

## RECOMMENDATION

For the reasons stated above, the undersigned Magistrate Judge RECOMMENDS that defendants' motion for summary judgment (Docket Entry No. 70) be GRANTED and the complaint DISMISSED with prejudice. If this report and recommendation is accepted, the undersigned RECOMMENDS that all pending motions be DENIED as MOOT.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from service of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any responses to

10

said objections.  Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).

>	**ENTERED** this 7th day of February 2013.

>						s/ John S. Bryant
>						JOHN S. BRYANT
>						United States Magistrate Judge